IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COLIN FRASER, individually and on
behalf of all others similarly situated,

    Plaintiff,

  v.

ASUS COMPUTER INTERNATIONAL,
a California Corporation, and ASUSTEK
COMPUTER, INC., a Taiwanese
Corporation,

    Defendants.
_____/

No. C 12-00652 WHA

**ORDER DENYING MOTION
FOR PRELIMINARY APPROVAL
OF SETTLEMENT**

## INTRODUCTION

In this putative consumer class action brought on behalf of consumers who purchased defendants Asus Computer International and Asustek Computer, Inc.'s tablet computer, the parties seek conditional certification of a class for settlement purposes and preliminary approval of the settlement. For the reasons stated below, the motion is **DENIED**.

## STATEMENT

This action was filed by plaintiff Colin Fraser on behalf of himself and all other United States residents who purchased an Asus Transformer Prime Eee TF-201 Tablet. The complaint alleges that the TF201 tablet contains a defect that results in loss or reduction in global positioning system ("GPS") and wireless ("Wifi") functionality. Specifically, the complaint alleges that the metallic unibody design of the product interferes with both GPS and WiFi. Product liability claims are asserted for negligence and defect in design, manufacture,

and assembly, breach of express and implied warranties, negligent misrepresentation, and violations under California law, including the Consumers Legal Remedies Act and Business and Professions Code Section 17200. Plaintiff seeks compensatory and statutory damages, injunctive relief, and attorney's fees and costs.

The Asus TF201 is a tablet computer that "uses Google's Android operating system, and competes with Apple Inc.'s iPad products" (Dkt. No. 47 at 7). The retail price of the device was initially $499 (Hanssens Decl. ¶ 6). Plaintiff alleges that defendants admitted in a customer-service statement that "[t]he ASUS Transformer Prime is made from a metallic unibody design, so the material may affect the performance of the GPS when receiving signals from satellites" (Compl. ¶ 17). Defendants respond that they promptly investigated consumer reports and complaints about GPS performance. In early 2012, defendants claim to have spent "significant money and engineering resources developing a GPS extension kit, known as a 'dongle,' which could be attached to the TF201 as an external antenna that boosted GPS signal and cured the performance" (Dkt. No. 47 at 8). The dongle accessory was offered for free to TF201 purchasers who filled out a request form through Asus's website between April 16 and July 31, 2012 (*ibid.*).

This action was commenced ten months ago. Shortly after defendants filed a motion to dismiss, the parties requested a stay, stating that the parties had "recently begun discussing a potential resolution of the action" (Dkt. No. 19). The request was denied because counsel were not authorized to engage in settlement discussions prior to certification of a class or appointment of interim class counsel (Dkt. No. 20).

To solve this problem, interim class counsel were appointed by order dated May 30 (Dkt. No. 36). The parties were referred to Magistrate Judge Jacqueline Scott Corley for mediation. With Judge Corley's participation, the parties engaged in mediation sessions over several months (Dkt. No. 47 at 10). During the mediation process, the parties jointly retained Dr. Dominique Hanssens to assess the value to consumers of the GPS feature of the TF201 (*id*. at 8). After continued negotiations, counsel reached a settlement agreement. Counsel now bring a motion for certification of a class for settlement purposes and preliminary approval of a

1   class-wide settlement. Defendants have filed a brief and declarations in support of the motion.
2   The key terms of the settlement agreement are:

*First*, the proposed settlement class would include all United States residents who purchased an Asus TF201 tablet between December 1, 2011, and the date of any preliminary approval of the settlement, and who have not previously returned the device for a full refund. The class would exclude Asus and its directors, officers, and employees, as well as entities controlled by Asus.

*Second*, class members could apply for a cash payment of seventeen dollars and a free GPS dongle, the same dongle already offered for free by Asus. In order to receive the money and/or dongle, however, a class member would have to timely fill out and submit a valid claim form. The time period for filing claims would be limited to 45 days after the sending of notice.[1]

*Third*, the settlement agreement would extinguish all relevant claims of *all class members*, whether or not they receive actual notice of the settlement or submitted a claim form. Unless a class member affirmatively opts out, he or she would be bound by the release. The release would apply to all claims "that were or could have been alleged or asserted against [defendants] relating to any claims that the TF201 suffers from GPS and Wifi strength or reception issues and any alleged misrepresentation or failure to disclose concerning such GPS or Wifi issues" (Dkt. No. 46-1 at 14). Thus, after the 45-day period, all nationwide liability by Asus for this defect would be wiped away and in its place would only be the need to pay the claims actually submitted and validated.

*Fourth*, the parties propose to provide notice to the class by (1) maintaining a settlement website and a toll-free number through which the notice and claim form can be obtained, (2) publishing a short summary notice on Asus's website and Facebook page, (3) mailing the notice to individuals for whom Asus has mailing information (constituting an estimated thirty percent of the class), and (4) providing a "push" notification directly to TF201 devices through an electronic notification system. The "push" notice, discussed in more detail below, would

---

[1] Asus indicated that it would be willing to extend the notice period to 60 days "if necessary to obtain a classwide release" (Dkt. No. 56).

3

1 ideally show up as an icon on a user's TF201 tablet screen.  Asus describes the proposed push
2 notice as being similar to notifications that Asus and third-parties send to the TF201 and other
3 Android-based mobile phone and tablet devices (Liu Decl. ¶¶ 12-14).  Asus would bear the cost
4 of providing notice.

*Fifth*, the parties represent that they have not negotiated or agreed upon any attorney's fee award (Dkt. No. 47 at 6).  The settlement agreement provides that any amount awarded for attorney's fees and expenses would be "in addition to and separate from all other consideration and remedies," and that class counsel will not request an award prior to the expiration of the time for submitting claims (Dkt. No. 46-1 at 19).

After a hearing, counsel were allowed many weeks to submit responses to follow-up questions by the judge.

For the reasons discussed below, this order now finds that this settlement agreement should not be approved in its current form.  Accordingly, the motion for preliminary approval of settlement is **DENIED**.

**ANALYSIS**

The focus must be on protecting the rights of absent class members.  *Their* rights are the rights to be extinguished by a class settlement.  What they will receive in exchange for the extinguishment and how fair will the notice and claim process be for the exchange are key questions that the questions that the district judge must ask, for once both counsel reach a deal, there is no one to argue against the proposal so as to prevent "overreaching or collusion."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

**1.    SCOPE OF RELEASE.**

The proposed release would wipe this nationwide potential liability off of defendant's books (save and except for anyone who submitted an opt-out form).  To opt out of the settlement agreement, a class member must submit a request three weeks prior to the final fairness hearing date.  Absent affirmative exclusion, all class members would be bound by the settlement and release, including those who do not timely receive notice or notice at all or who are unable to fill

out and send in a claim form in time. Based on net sales as of May 2012, there are an estimated 133,306 class members (Hanssens Decl., Exh. C).

In exchange for this nationwide blanket release, Asus would be obligated to pay only on a claims-made basis. There would be no established settlement fund amount, and no additional benefit to the class such as *cy pres* or other relief. Instead, after a short notice period, the claims of all class members failing to opt out would be extinguished — whether or not they received actual notice of the settlement agreement. Long experience has taught us that a small percentage will go to the trouble to submit a form for seventeen dollars.

It would be much fairer to limit the release to those who actually submit claims and who are paid the seventeen dollars. Those who wanted to surrender their claims for seventeen dollars could do so and those who preferred to keep their claims for themselves or who had greater priorities than filling out the form could simply decline to participate. The amount of the settlement is so small per class member that the risk is large that class members — even if they learn of the settlement — will not get around to completing a claim form in time and will thus leave their seventeen dollars in the pocket of Asus, which is no doubt a large consideration for defendant. Thus, it would be fairer to limit the release only to those who submit claim forms and are actually paid. (There would be an additional benefit to this claims-made release procedure, namely that the claims-made release process would generate a list of specific and ascertainable persons whose claims were extinguished and who were bound by the judgment.)

Alternatively, a *cy pres* solution would also be fair. That is, if a class member with actual notice declined to submit a claim form, then he or she could do so in the realization that his or her seventeen dollars would go to a worthwhile consumer-protection cause — but it would not remain in the pocket of Asus.

To be sure, there is a benefit to Asus in a class-wide release regardless of the number of claim forms submitted. From Asus' perspective, it has a legitimate business interest in "buying peace" and moving on to its next challenge. The Court is not critical of Asus and, indeed, understands its position. Nonetheless, what is fair to Asus is not necessarily fair to the absent class members. Fairness to absent class member counts. Convenience to the defendant does not.

### 2. PROPOSED NOTICE.

There is a second, exacerbating problem. There is no way to give effective notice to all class members so as to be reasonably sure they will all receive notice that their rights will be extinguished.

Notice of the settlement would be provided in four ways. The first two — publication on the settlement website and on Asus's website and Facebook page — cannot be expected to provide adequate and timely notice to the over one hundred thousand class members. The third form of notice would be through a means known as a "push" notification, whereby Asus would use "its existing upgrade installation notification technology . . . to 'push' a copy of the Summary Notice directly to each Class Member's individual TF201 device" (Dkt. No. 46-1 at 16). The "push" notification would be sent by Asus to each TF201 tablet "which was originally purchased in the US through authorized distributors and resellers" (Liu Decl. ¶ 7). Mail notice would also be provided, but Asus estimated that it only has mailing information for approximately thirty percent of the class.

The "push" notification procedure is described further in the declaration of Eric Liu, senior director of software development department at Asus. The notification to the user would proceed in several steps. *First*, an icon with a small amount of text would appear on the device's home screen and display a "brief pop up box" (Liu Decl. ¶ 10). *Second*, *if* the user taps on the icon, a larger pop-up box would then display on the screen. This second pop-up box would also have limited text (*id.* at ¶ 11).

This proposed mode of notice is not sufficient. To receive the "push" notification, a class member would need to be using a TF201 device that is connected to the internet. The gravamen of this civil action is that the defects in question have led to reception issues. Therefore, it cannot be reasonably assumed that all or virtually all class members will receive the push notification. The very reception issues in suit create too much doubt on that score. Even if the reception worked, moreover, there is no reasonable assurance that the devices would be in use during the claims period, especially after time has passed. Next, there is no reasonable assurance that all users would actually review the information provided in the "push" notification, which is

6

customarily used for different types of notification. Asus itself has only used the notification mechanism to invite customers to install new software (*id.* at ¶ 20).

Based on the foregoing, this order finds that the proposed forms of notice do not meet the requirement of Rule 23(c)(2)(b). It is likely that a substantial number of class members would not receive timely notice of the settlement using the proposed procedures.[2]

### 3. BENEFIT TO CLASS MEMBERS WHO TIMELY SUBMIT A VALID CLAIM FORM.

Class members who *do* timely submit a valid claim form within the 45-day claims period would be eligible to receive a seventeen-dollar cash payment and could also request a free GPS dongle, which Asus claims addresses problems with GPS performance. This same GPS dongle was already provided for free to customers who submitted a request through Asus's website during an 11-week period earlier this year. An estimated 12.97 or 13.04 percent of TF201 customers requested the GPS dongle during this period (Hanssens Decl. ¶¶ 17, 26b).

To validate their proposal, the parties jointly hired a supposed expert, Dr. Hanssens, to analyze the value of the GPS feature to purchasers of the TF201 tablet. The expert was requested to analyze only the GPS feature, and was specifically instructed not to consider Wifi functionality. The parties claim that, although they both provided the expert with "whatever documents or information they saw fit," the expert performed his analysis "entirely independently" (Dkt. No. 47 at 8). The expert did not conduct an independent consumer survey of TF201 users, and indeed would not have been able to, given the limited amount of discovery and short time frame (Hanssens Decl. ¶ 4). Instead, the expert reviewed "secondary sources such as existing surveys and market research studies, Asus sales and after-sales information, and qualitative evidence related to the importance of GPS functionality . . ." (*ibid.*). Based on review of these materials, the expert somehow determined that the value of the GPS feature was 1.5 to 3.5 percent of the sales price, corresponding to a monetary value range of $7.49 to $17.47 (*id.* at ¶ 30).

---

[2] For those class members for whom a postal address is known to Asus, the Court would plainly require a postal mailed notice. This would be only a small percentage of the proposed class.

7

The parties contend that the seventeen-dollar cash payment is at the high end of the valuation, and can thus be presumed to be a good settlement for class members. This order notes that the payment and dongle remedies appear to only address the GPS feature. Even if the expert's valuation were credited, an issue which this order does not decide, the expert's report only analyzes the value of the GPS feature and does not consider the value of Wifi functionality, which also is in the complaint. Counsel do address this disconnect. Although the settlement agreement states that class counsel believe that the claims asserted in the complaint have merit, counsel now downplay or ignore the Wifi claim, *perhaps because the very existence of the claim is cross-wise with the proposed avenue of giving notice*.

Based on the record currently before the Court, insufficient discovery and investigation have been conducted to allow counsel and the Court to value the claims in suit. Defendants claim to have provided information to plaintiff during the mediation process demonstrating that the Wifi performance of the tablets was satisfactory (Dkt. No. 47 at 8). Plaintiff, for his part, states that he has requested more discovery regarding whether the Wifi functionality was in fact within an acceptable range (Dkt. No. 46 at 19). The current record is insufficient to determine whether the benefit under the proposed settlement to class members who submit a valid and timely claim form is fair and reasonable to those class members.

## CONCLUSION

For the reasons stated above, the motion for preliminary approval of the parties' settlement agreement is **DENIED**. This order is without prejudice to the parties' ability to seek approval of a revised settlement agreement that addresses the foregoing shortfalls. The most likely way to resurrect this settlement would be to limit the release only to those who submit a claim or to provide for a *cy pres* disposition of unclaimed funds.

//

//

//

8

To put this action back on track, defendants shall either file their answer or re-notice their motion to dismiss for a hearing date at least 35 days out. A separate case management order shall issue. Please ask for no more stays.

**IT IS SO ORDERED.**

Dated: December 21, 2012.

W<small>ILLIAM</small> A<small>LSUP</small>
U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>

9